WYATT v. O'NEAL.

5-2969                                      370 S. W. 2d 129

Opinion delivered June 3, 1963.

[Rehearing denied September 16, 1963.]

*Victor Nutt*, for appellant.

*Caldwell T. Bennett, Yingling, Henry & Boyett*, for appellee.

PAUL WARD, Associate Justice. This litigation grows out of a series of business transactions in connection with the hatchery business. Appellant Wayne Wyatt,

who owned equipment and facilities for such business, evidently was encountering financial difficulties early in 1958. In February of that year he executed two chattel mortgages on the above mentioned personal property for about $5,000, and he also executed a loan agreement with appellee wherein the latter was to loan him several thousand dollars. One of the mortgages above mentioned was made directly to appellee and he acquired the other one by assignment.

Appellee filed two separate complaints against appellants to collect certain notes and to foreclose certain securities. Said suits were docketed as number 5485 and 5501. The issues involved can be best indicated by setting out the substance of each complaint.

In suit number 5485 it was alleged that appellants were indebted to appellee in the total sum of $7,000 (plus interest) on four separate written notes: One note for $2,000 was made to G. V. Coker, dated February 10, 1958, and assigned to appellee; note for $1,750 made to appellee, dated December 5, 1958; note for $2,000 made to appellee, dated November 24, 1958; note for $1,250 made to appellee, dated December 15, 1958. It was also alleged that the payment of said notes was secured by chattel mortgages.

In suit number 5501, between the same parties, appellee asked judgment against appellants in the sum of $5,000 (plus interest) based on four notes signed by appellants as follows: note dated February 26, 1958 for $2,000; note dated March 12, 1958 for $1,000; note dated March 15, 1958 for $1,000; and, note dated March 26, 1958 for $1,000. The above notes were secured by a mortgage on what was called the Steprock Gin property.

In answer to the above complaints appellants admitted signing a $2,000 note, denied signing certain notes, and stated they had no knowledge concerning other notes. Mrs. Wyatt, in a separate answer, stated that she was a tenant in common with her husband of certain personal property (listed in the chattel mortgages) and that she had never encumbered any of it.

Mr. Wyatt, in a twenty page cross-complaint, asks for $8,027.81 for breach of a "confidential contract" and $7,083 for loss of equity in certain property.

By proper order of the trial court the two causes of action were consolidated for purpose of trial, and the issues were tried under docket number 5501.

After an extensive hearing the trial court refused to allow appellant (Wyatt) anything on his cross-complaint, and entered a decree in favor of appellee in the sum of $5,000 (with $1,790 interest) against appellants, impressing a lien on the "Steprock Property", and in the sum of $7,000 (with $1,781 interest) secured by the Coker mortgage. From the decree appellants prosecute this appeal, relying on the points hereafter discussed for a reversal.

*One.* Appellants state

"That there is no evidence upon which to substantiate the finding of the lower court that Appellants were not entitled to any damages for breach of contract by Appellee."

Appellants apparently overlook the fact that the burden was on them to prove the terms of a contract, that it was broken by appellee, and the amount of damages resulting from such breach. The testimony relative to the above items is involved and conflicting, and it would serve no useful purpose to set it out in full. The chancellor heard the testimony and specifically found appellants failed to establish their claim. In arguing this point appellants have not called our attention to any testimony which indicates the chancellor's finding is not supported by the weight of the evidence.

*Two.* We find no merit in the contention

"That Appellee was not entitled to judgment for the sum of $5,000.00 on the Coker mortgage because of the Clean Hands Doctrine."

To support that contention appellants say:

". . . the purpose of Appellee's purchase of the Coker mortgage was to secure a preferred position for

Appellee over the Quaker Oats Company mortgage. This was to be accomplished by the purchase of the valid $2,000.00 mortgage which Appellant admits is a just debt and is due Appellee, and by making supposed advances thereunder in the same amount as was secured by other property, referred to as the Steprock property, whereupon Appellee promised to release the Steprock mortgage."

Appellants say that appellee gave them checks on the First National Bank of Heber Springs, that they endorsed them and returned the money to appellee. This is emphatically denied by appellee. We can hardly agree with appellants that it "was peculiar that it was necessary for appellee to go to Heber Springs and discuss the business with the president of the bank . . .", absent a showing of what was discussed. On the other hand, the bank president testified that, according to their records, Wayne Wyatt got the money on the checks. In the absence of more convincing evidence to the contrary, we must sustain the chancellor in concluding, in effect, that appellee came into court with "clean hands". In fact it would appear that Wyatt and appellee are pretty well on the same level in respect to the condition of their hands.

*Three.* We do not agree with appellants' argument that

"Appellee is estopped by his pleadings to assert a secured claim for $2,000.00 represented by promissory note or otherwise."

This argument is based upon two exhibits purporting to be pleadings in a suit between different parties and in a different court. The exhibits show that appellee (represented by a different attorney) claimed a certain $2,000 note (signed by appellants) was unsecured. It is their conclusion, therefore, that appellee is estopped in this case to assert the note is secured. We think a sufficient answer is that some twenty notes were executed by appellants to appellee and that there is no positive evidence to identify the note in question.

Finding no reversible error, the decree of the trial court is affirmed.